# IN THE UNITED STATES DISTRICT COURT

## For the District of Southern Ohio
## Southern Ohio District - Cincinnati, Ohio

**Bardes v. Bush et al  (No. 1:25-cv-661)**

*Plaintiff:*                                                                      )
                                                                                 )
David Andrew BARDES, as a taxpayer                                               )
                                                                                 )
*Defendants:*                                                                    )
                                                                                 )
George Walker BUSH, individually                                                 )
Richard Bruce CHENEY, individually                                              )
Barack Hussein OBAMA II, individually                                            )
Joseph Robinette BIDEN Jr., individually                                         )
Donald John TRUMP, officially and individually                                   )
William Henry GATES, III                                                          )
MICROSOFT Corporation                                                            )
Lawrence Edward PAGE                                                              )
ALPHABET, Inc.                                                                   )
Timothy Donald COOK                                                              )
APPLE, Inc.                                                                      )
Mark Elliot Zuckerberg                                                           )
META PLATFORMS, INC.                                                             )
Jeffrey Preston Bezos                                                            )
AMAZON.COM, INC.                                                                 )
GODADDY INC.                                                                     )
UNITED STATES OF AMERICA                                                         )
SOCIAL SECURITY ADMINISTRATION                                                   )
CENTRAL INTELLGENCE AGENCY                                                       )
FEDERAL BUREAU OF INVESTIGATION                                                  )
Laura Lane Welch Bush                                                            )
Assistant US Attorney John J. Stark, officially and individually                 )
Jose A. Rodriguez Jr., individually                                              )
James Alton Cannon Jr., officially and individually                              )
Paul W. Garfinkel, officially and individually                                   )
Dr. Ralph B. Piening III, MD                                                     )
John and Jane DOE(s)                                                            )
                                                                                 )

## PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATIONS

1. Pursuant to 28 U.S.C. § 636(b)(1), I respectfully submit the following objections to the Magistrate Judge's Report and Recommendation ("R&R") recommending dismissal for lack of subject-matter jurisdiction.

## I. INTRODUCTION

2. The R&R recommends dismissal on the basis that my allegations are "irrational," "wholly incredible," and "fantastic or delusional," relying on *Apple v. Glenn* (183 F.3d 477 (6th Cir. 1999)) and related authority.

3. This characterization is erroneous. My Complaint contains specific factual allegations of intentional infliction of emotional distress, life-long physical injury, identifiable actors, and documented events. These allegations are not inherently impossible or fictitious, and therefore do not meet the narrow standard required for dismissal under *Apple v. Glenn*. Even *Apple* itself says dismissal is warranted only when claims are "totally implausible" and "devoid of merit."

4. The R&R improperly conflates disbelief of my allegations based on perceived personal shortcomings with the legal standard for "fantastic or delusional" claims. It is clear the magistrate failed to read the documented factual core exhibits from the related cases that I specifically listed and incorporated on page 3 of the Complaint. Since the exhibits were already in the record, I saw no need to repeat in the Complaint. I am going to step through my story because the R&R improperly rejects my factual allegations *wholesale*, rather than separating specific incidents, injuries, actors, times, places, and dates.

5. For the sake of simplicity, I will refer to the first *Bardes v. Bush et al* (1:22-cv-290) case as ("Bush-1st"), this present *Bardes v. Bush et al* (1:25-cv-661) case as ("Bush-2nd") and the *Bardes v. Cole et al* (1:24-cv-701) case as ("Cole".)

6. The bulk of my factual core and documented allegations that the magistrate failed to read are found in the exhibits on *Bush-1st* (Exhibits 1 to 4 from Doc#31, Exhibit A from the complaint, and Doc#35) For the list of other incorporated exhibits that contain the factual documented allegations, please see page 3 of the Complaint.

**January 24, 2004 - James Island (Charleston,) South Carolina**

7. On January 24, 2004, while living on James Island (Charleston,) South Carolina, I received in the mail a large envelope from the South Carolina Department of Social Services ("DSS".) Contained in the envelope was a legal notice of a civil action, number 04-DR-10-193, having been initiated against me claiming I was $13,596 dollars in child support arrears. Attached to the notice was a five-page notarized affidavit signed by my ex-wife Betsy Foos Bardes. I was given a short time frame to meet with the prosecutor, South Carolina State Attorney John M. Magera, to answer to the charges.

8. Having kept excellent records, I gathered every canceled check, bank statement, and receipt to then prepare a large Excel® spreadsheet printed on tabloid sized paper. On the designated day, I sat down at John M. Magera's DSS office desk and spent three hours reviewing all 96 child support payments over five years, including inspecting the cashed checks with Betsy's deposit signature. On October 11, 2004, John M. Magera obtained a signed family court order striking the falsely reported arrears, setting the arrears to *zero* balance.

9. So far, I have not said anything "totally implausible", "irrational or wholly incredible" and "fantastic or delusional" rather I have stated fully documented undisputed facts.

10. After the day I met with DSS prosecutor John M. Magera and proved I was innocent, Mr. Magera was faced with an ex-wife who had obviously committed perjury in swearing the false affidavit of arrears, so he scheduled a meeting for Betsy Foos Bardes to come to his office and

answer to such allegations. Based on what John M. Magera confessed to his employers, to which his employment was subsequently terminated, and to what John M. Magera told my sister upon my release from jail, was that Betsy Foos Bardes performed oral sex upon John M. Magera, and somehow left with Magera's only copy of my arrears spreadsheet. This left John M. Magera to write me a letter, which I still have, asking me for another copy of the spreadsheet, and to which I obliged.

11. The other problem was the almost year lapse between being falsely accused and Magera's obtaining the judges signature striking the falsely reported arrears. The tragedy, however, was the fact that South Carolina DSS did not extend any form of due process protection to those who are falsely accused. The moment the custodial parent claims the non-custodial parent is in child support arrears, your name and Social Security number are entered into county, state, and federal databases as a deadbeat parent which triggers a plethora of punishment mechanisms.

12. On May 11, 2004, during the long delay period before Magera zero-balanced the false arrears, I received in the mail the first of what I called "DSS Destroy" letters from the DSS. The notice said in part, "THIS AGENCY HAS DETERMINED THAT YOU OWN PAST-DUE CHILD SUPPORT AND/OR SPOUSAL SUPPORT. OUR RECORDS SHOW THAT YOU OWE AT LEAST THE AMOUNT SHOWN BELOW. IF YOUR CASE WAS SUBMITTED TO THE UNITED STATES DEPARTMENT OF TREASURY FOR COLLECTION IN THE PAST, THIS AMOUNT IS SUBJECT TO COLLECTION AT ANY TIME BY ADMINISTRATIVE OFFSET AND/OR FEDERAL TAX REFUND OFFSET...THE AMOUNT OF YOUR PAST-DUE SUPPORT WILL ALSO BE REPORTED TO CONSUMER REPORTING AGENCIES...THIS AGENCY WILL MAKE USE OF THE LIEN. LEVY, AND SEIZURE OF REAL OR PERSONAL PROPERTY LOCATED IN OR OUT OF STATE TO SATISFY YOU

DEPT. PROPERTY SUBJECT TO THESE REMEIDES INCLUDES, BUT IS NOT LIMITED TO REAL ESTATE, MOTOR VEHICLES, BANK ACCOUNTS, STOCKS, BONDS, RENTAL RECIEPTS, PUBLIC AND PRIVATE PENSION OF RETIREMENT FUNDS, CASH-SURRENDER VALUE ON LIFE INSURANCE POLICIES, AND PERIODIC SOURCES OF INCOME INCLUDING WAGES, PENSIONS, WORKER'S COMPENSATION BENEFITS, DIVIDENDS AND INTEREST PAYMENTS."

13. When I first moved to Charleston, South Carolina, having left my job in 2 World Trade in Manhattan so my children would have their father in their lives, I started my own executive benefits consulting practice by borrowing from myself. So, I was highly leveraged, but my business was producing sufficient cash flow to support myself and two employees. That was, until the "DSS Destruction" mechanisms trashed my business credit shutting off my business line of credit. Credit cards were canceled, loans recalled, I lost business clients, checking accounts closed, assets were seized. It happened so fast I did not have time to file for bankruptcy, and over the course of about eighteen months, I went from owning a million-dollar company, to being $300,000 in debt, broke, living in tents in the woods, and was deeply depressed to the point of being unemployable, as you can imagine.

14. So far, I have not said anything "totally implausible", "irrational or wholly incredible" and "fantastic or delusional" rather I have stated fully documented undisputed facts.

15. I threatened to sue John M. Magera and the DSS for my unjust financial ruin, which only served to anger Magera to prosecute me for real child support arrears, as I did not have $40,000 a year for child support, I was broke and unemployable living in the woods.

16. I was put on trial twice, and I simply told my story and presented the documented facts. First came the March 2, 2005 trial before South Carolina Family Court Judge Jocelyn B. Cate, then

came the October 18, 2005 trial before South Carolina Family Court Judge R. Wright Turbeville. I have the full court transcripts of both trials. I was found not guilty twice, which really angered John M. Magera.

17. I brought my family pastor, Deron Peterson, to the Judge Turbeville trial as a witness. After the trial when Pastor Peterson was speaking with Betsy Foos Bardes in the parking lot, a confrontation occurred with John M. Magera. As Paster Peterson wrote in his affidavit of the event "*6. At this point Mr. Magera became quite frustrated and stated angrily, 'You go tell Mr. Bardes he's fucked!' I then asked him to calm down and refrain from using such profane language in mine and Ms. Foos-Bardes presence.*" When Pastor Peterson later told me of Magera's vulgar threat, I took it as a death threat.

18. Judge R. Wright Turbeville ended the trial ordering John M. Magera to obtain my psychological records to substantiate depression and to work out an arrangement with me, and then report back to the court. John M. Magera had no interest in working anything out with me, and quickly rolled the case into a new trial before Judge Paul W. Garfinkel, a friend of Magera's from the same synagogue, and known statewide as the *hanging judge*. Judge Paul W. Garfinkel had been quoted in the Boston Globe bragging about his use of what he called the "Magic Fountain" where he would just jail the deadbeat dads whereupon those who had the money would pay to release themselves from jail, while those truly indigent would be stuck with a year of forced hard labor for the sheriff earning seventeen cents an hour.

19. Knowing I was going to be jailed, and perhaps killed if Magera's threat was affected, I voluntarily attended the April 3, 2006 hearing before Judge Paul W. Garfinkel. Sure enough, the court transcript reveals Judge Garfinkel never inquired into my ability to pay, never even heard me in any manner, and just sentenced me to six months in jail without good time or work credits.

After Judge Garfinkel sentenced me, I looked into his eyes and yelled "*You are fired, the Public Trust has fired you, you are a disgrace, get down from that bench.*" I have the court transcript to prove this (It would take me doing a letter writing campaign and website, and many others similarly screwed, who protested in the streets, over several years, but sure enough the State of South Carolina fired Paul Garfinkel in the middle of his contract term. Paul Garfinkel then went back into private practice with a local law firm.)

20. So far, I have not said anything "totally implausible", "irrational or wholly incredible" and "fantastic or delusional" rather I have stated fully documented undisputed facts.

21. After I yelled at Judge Paul W. Garfinkel firing him, four bailiffs grabbed me and lifted me up into the air, carrying me to a side room where I was chained in body irons and driven off to jail. I made it halfway through the booking process but had not yet taken my mugshot when someone gave the order for me to be locked in the "*intensive management*" (punishment) holding cell number 1613, located in the booking area. The jail's transaction log obtained during discovery of my first federal lawsuit, showed I was locked in cell 1613 at 6:20pm on April 3, 2006.

22. During discovery, I was given pictures and measurement of air conditioning vents in every cell I had been confined as well as cell sizes. The evidence showed the air conditioning vents in the average sized cells to be a consistent 36 square inches in area size. Punishment cell 1613 was half the size of the average cell, yet had an air vent of 84 square inches in area, 233% larger for a cell half the size. I also proved cell 1613 was directly under the one-story roof top refrigerant coil air conditioner air handler, where the oversized large vent caught and directed the super-chilled air coming off the air handler directing it into the small cell at high velocity.

23. I asked Google and ChatGPT the following question: *"What is the temperature of the air coming directly out of a refrigerant coil air conditioner air handler?"* the answers returned are:

[GOOGLE ANSWER] "The air temperature directly out of an AC air handler (after the coil) is typically 40°F to 55°F."

[CHATGPT ANSWER] "The air temperature coming directly off a refrigerant coil (the evaporator coil in an air handler) is typically about 50°F to 60°F (10°C to 16°C):"

*I asked Google and ChatGPT: "Is it true that hypothermia can start at 71 degrees F and lower?"*

[GOOGLE ANSWER] "Yes, it is true that hypothermia can start at air temperatures around 71°F (21.7° C) or lower, particularly in vulnerable individuals, because hypothermia is defined by a body core temperature below 95°F (35° C)"

[CHATGPT ANSWER] "Short answer: Yes—but only under certain conditions. For a healthy person in dry, still air, 71°F (22°C) is not normally dangerous. But hypothermia can begin at temperatures that warm when other factors are involved. Even though 71°F sounds comfortable, heat loss can exceed heat production if conditions are right."

24. Sheriff Alton Cannon, Jr. admitted during discovery that I asked for my jacket three times, and was denied each time. The sheriff also admitted that during those three days I was locked in engineered cold cell 1613, I was not given any water, food, or even toilet paper. I shivered violently and painfully for about the first nine hours, then at about 3am on the second day, April 4, 2006, I lost consciousness due to the cold. I have no memories of the two days I was unconscious.

25. At 2:55am on the morning of the third day, April 5, 2006, I was removed from engineered cold cell 1613. The sheriff admitted, and video footage from the jail's security camera's show me

being taken by wheelchair, with my head flopped sideways, to the jail's hospital on the third floor. I was unable to walk; my legs were paralyzed. Once in the jail's hospital, four nurses and one guard signed as witnesses to a "*Refusal to Treat*" form claiming I refused to sign their liability waiver form (I was initially unable to hold a pen,) thus refusing their medical care. One nurse chided me saying "*You will be sorry.*"

26. The jail's transaction log showed I was laid on the floor locked in a small cell for the next seven days, and the sheriff admitted, that I was prohibited from using the telephone, prohibited from using a pencil or paper, was denied use of the shower, and was denied use of my glasses. During those seven days of isolation, the full use of my left leg returned, but my right leg would not work and I had a heavy limp towards my right side. On the tenth day, I was released and relocated to the "Medical Observation Cellblock -Pod 3G" under observation of the medical staff where I remained for a total of 72 days in Sheriff Cannon's jail.

27. On June 14, 2006, I was released from Sheriff Cannon's jail only after signing under much duress a jailhouse agreement that I would not sue anyone regarding the conditions of my confinement, along with the requirement that I immediately leave the state and never return. My sister, who came to the jail for my release had met the day before with John M. Magera. Mr. Magera told my sister about Betsy giving him oral sex and stated that if I returned to South Carolina, I would be killed. My sister passed the message to me. and I left the state by commercial airplane.

28. So far, I have not said anything "totally implausible", "irrational or wholly incredible" and "fantastic or delusional" rather I have stated fully documented undisputed facts. Everything I have said has documented evidence, verifiable medical records from the jail, affidavits, legal admissions in a court of law, and obtainable testimony and confirmation by existing county, state,

and county jail records.

29. After I was released from jail, I was still suffering from some sort of paralysis in my right leg and hip, as well as severe abdominal attacks. Both of which I attributed to the hypothermia.

30. On March 12, 2007, neurologist Dr. Gregory J. Esper, MD, of the Emory University Department of Neurology, performed an MRI of my brain. Dr. Esper found my brain to be working perfectly, no signs of any brain damage.

31. On August 7, 2007, I had a severe abdominal attack I thought was due to a heart attack, and was rushed to Piedmont Hospital in Atlanta. The doctors took an MRI of my heart. The doctor said my heart was as strong as a 25-year-old, and suggested I get a colonoscopy an endoscopy to try to determine the source of the abdominal attacks.

32. But my colonoscopy and endoscopy were both normal. I then had an EEG to see if any seizure activity in my brain was causing the leg problems. The EEG was normal, so I then had a 24-hour monitored EEG which was also normal. I just wanted to find the source of the paralysis in my right leg.

33. On May 21, 2008, psychologist Dr. John T. Wheeler, PhD, wrote a letter diagnosing me with PTSD from the trauma of hypothermic torture experienced in the jail. I have a copy of his letter, as well as the receipts for the colonoscopy, endoscopy, and MRI of my brain.

34. My left leg was my strong leg, while my right leg had some sort of damage, so over time my left leg carried too much of the load, such one morning in 2009, I suddenly awoke with a sharp pain in my left hip socket. This was the first tiny fracture in the top of my femoral head of my left hip bone. I was unable to buy health insurance with a preexisting condition, so I continued to walk on my fractured hip using a cane. After two years, my left leg was half an inch shorter than

my right leg, due to the ongoing crushing of my femoral head.

35. On December 9, 2011, while driving through the Elon University campus, in Elon, North Carolina, I stopped at a crosswalk while students crossed the street. I was rear ended by a college student driving a SUV traveling at about twenty-five miles per hour. My seat belt performed perfectly, holding my body secure from damage, but my already broken left hip was crushed even further with a loud pop. Another inch of my left femur was crushed. The pain immobilized me. An ambulance took me to the Alamance Regional Medical Center in Burlington, North Carolina.

36. Betsy Bardes, my ex-wife, who previously apologized to me and I forgave her, and adult daughter Allison Pape Bardes, met me in the emergency room. The two x-ray doctors called us back to their illuminated wall with the x-rays of my hip. The radiologists pointed out my crushed femur on the x-ray, and also diagnosed my left femoral head with *avascular necrosis* (dead bone,) showing the femur had been broken for a long time.

37. One of the doctor's pointed to a metal object in my right hip, and asked me when was I shot with a gun? I looked at Betsy, then Allie, and the three of us answered together "*never, not that we were aware.*" The doctors looked bewildered, and told me I had a bullet in my right hip.

38. It did not register until after the three of us got into Betsy's car to drive me to my apartment, as I was on crutches, did it dawn on me that '*those bastards in South Carolina shot me with a gun while I was in hypothermic coma for those two days.*' This explained the nasty scar on my stomach with suture marks, the paralysis down my right leg, the source of the abdominal attacks, and why the medical staff in the jail denied me medical care, wanting to protect themselves from liability. All my medical evidence finally made sense.

39. In 2013, Betsy wrote in an affidavit saying since she was 13 years old, and I was 15 years old, I had never been shot with a gun. The only time someone could have shot me without me knowing, was during those two days I was unconscious in engineered cold cell 1613.

40. So far, I have not said anything "totally implausible", "irrational or wholly incredible" and "fantastic or delusional" rather I have stated fully documented undisputed facts. I did not "*allege*" that I was shot with a gun, rather it was two doctors who "*told me*" I had been shot with a gun. I did not fabricate anything; I did not experience a delusion. You can examine the x-ray yourself and come to your own conclusions. I have enclosed a copy of the x-ray in Exhibit 1 of this document.

41. I am going to stop my story here to save the court's time, as I have made my point. The R&R improperly rejects my factual allegations *wholesale*, rather than separating specific incidents, injuries, actors, times, places, and dates. Even *Apple v. Glenn* (183 F.3d 477 (6th Cir. 1999)) itself says dismissal is warranted only when claims are "totally implausible" and "devoid of merit." The R&R errs in dismissing my entire story as factually "irrational or wholly incredible" and "fantastic or delusional."

42. Just as there is documented evidence supporting my story to this point, there is also evidence supporting the rest of my factual allegations.

43. The fact George Walker Bush, Dick Cheney, and a finite group of CIA officers engaged in a secret and much denied campaign of mostly "cold cell" torture to kill innocent Muslims, followed by declarations exempting themselves from domestic and international laws against torture, to having the US Department of Justice issuing memorandums legalizing deadly "cold cell" torture as being lawful, and convincing the Obama Administration to block all torture lawsuits claiming state secret privilege, immunity, and "special factors."

44. This blocking and dismissing of all torture lawsuits continued until my lawsuit, *Bardes v. Auld et al* (1:15-cv-214) came before the US Supreme Court in April of 2016, at which time President Barack Obama reversed course and allowed lawsuits, like the ACLU's cold cell torture lawsuit, *Salim v. Mitchell* (2:15-cv-00286-JLQ), to proceed towards trial, shocking the legal world.

45. I did not invent, or fabricate, all the federal judges in my prior domestic cold cell torture lawsuits to issue orders of dismissal claiming "cold cell torture does not exist" and that I was "delusional" for "fabricating" such claims. It was the US Senate's December 9, 2014 published 'Report on CIA Torture' that revealed in too graphic of terms, the brutal Bush/CIA "cold cell" torture deaths of two innocent Muslims. Nor the fact that criminal trials against the five known terrorists held at Guantanamo Bay, Cuba cannot take place due to the excessive and prolonged use of "cold cell" torture and the host of other Bush memo defined *"enhanced interrogation techniques."*

46. So, while I was minding my own business, seeking remedies in federal court for my domestic use of cold cell torture by Sheriff Cannon, I ran headlong into the juggernaut of former US presidents, vice presidents, the US Department of Justice, the CIA and FBI going to extraordinary efforts to avoid being prosecuted for their brutal cold cell torture murders.

47. My allegations that George Walker Bush would use the CIA to bribe federal judges to dismiss my federal cold cell torture lawsuits with claims that "cold cell torture does not exist" and that I was "delusional" in making such claims, makes perfectly logical, and sequential sense. Yet the magistrate claims now "The allegations in Plaintiff's Complaint are so implausible as to render the Complaint frivolous."

48. On March 20, 2023, at 5:04pm, two weeks after Judge Douglas R. Cole dismissed my first *Bush-1st* lawsuit with prejudice claiming my story defied reality being akin to time traveling to Pluto, someone on an IP address at the "US Courts" in "Cincinnati, Ohio" (where Judge Cole worked) typed "coldcelltorture.com" into Google, then clicked and visited "ColdCellTorture.com" giving me the website hit. Then they clicked the link for "DavidBardes.com" and visited, downloading three (3) lawsuit files. Also visiting at the same time, indicating a joint meeting, was William Henry Gates, III on the Microsoft network IP address, Lawrence Edward Page on the Alphabet's network IP address, someone at the CIA on their backbone network IP address, and someone in Washington State that I assumed was a lawyer for Microsoft or Gates, perhaps from Fox Rothschild LLP (today that IP address pings to the FBI network, the change which occurred after I published the raw website log evidence with IP addresses.)

49. The topic of their secret meeting was obviously me and my websites. The only person in the federal courthouse in Cincinnati who my *Bush-1st* defendants would have an interest in plotting against me was Judge Douglas R. Cole. The mathematical probability that this US Court's courthouse employee was Judge Douglas R. Cole nears one-hundred percent, albeit with a standard deviation.

50. Four days later, on March 24, 2023, I filed a motion to reconsider (Doc#35) that included the raw website traffic log evidence directly accusing Judge Douglas R. Cole of criminal bribery. On April 17, 2023, Judge Douglas R. Cole issued an order (Doc#39) denying my motion to reconsider, that contained no denial of wrong doing, but rather contained well worded alibis that amounted to a protected confession against future criminal prosecution. Judge Douglas R. Cole did not deny a meeting occurred, but rather claimed anyone at the courthouse could be the

culprit. Which I refuted because the US Court's own IT department could identify the exact computer and name of employee logged on at the time, even confirm that person downloaded three files to their computer.

51. This website log evidence of that clandestine meeting is admissible evidence in any court, and is treated by the federal courts as *"indisputable evidence"* that is used regularly to convict and even imprison wrong doers.

52. Not only is it *plausible* Judge Douglas R. Cole was bribed by my defendants, it is highly *probable*. But what occurred next, just about proved it.

53. On December 9, 2024, I filed the *Cole* lawsuit directly accusing the then three judges of accepting bribes to dismiss my lawsuits. The case was initially assigned to Judge Matthew W. McFarland, but Judge McFarland did not want to be the judge, so on December 11, 2024, the case was reassigned (Doc#3) to retired Judge Michael R. Barrett. I subsequently pointed out Judge Barrett was a former neighbor who is the brother of my sister's best friend, who are close friends with Laura Bush. I suspected Judge Barrett was chosen due to the ability of obtaining loyalty to George and Laura Bush.

54. In my July 17, 2025 objections to the court's rapid change of judges (Doc#17,) I provided the raw website traffic log evidence of a meeting that occurred at 3:54pm ET on Thursday, July 10, 2025 between Lawrence Edward Page on the Alphabet network IP address, someone in Cincinnati, Ohio on a Verizon iPhone, and someone in **Toledo, Ohio** on an iPhone and Mac computer on Wi-Fi from Buckeye Cablevision. This was my first ever visitor from **Toledo, Ohio**, so I had no idea whom it could be. That was, until four days later on July 14, 2025, when the *Cole* case was reassigned (Doc#16) to a long-retired President George W. Bush appointed Judge Zack Zouhary from **Toledo, Ohio**. This proved Judge Zack Zouhary was a compromised tool of

my defendants.

55. On July 28, 2025, Magistrate Judge Peter B. Silvain, Jr. filed an order recusing himself from the case, with no subsequent naming of a replacement. On December 15, 2025, I filed a motion of default judgment against George Walker Bush in my *Bush-2nd* lawsuit. This angered George Walker Bush, so two hours later he directed his controlled Judge Zack Zouhary to dismiss the *Cole* case with an already prepared order clearly written before the *Bush-2nd* case was even filed, that declared me a "*vexatious litigator*" forever barred from the federal courts without prior approval from George Walker Bush bribed and wholly controlled judges.

56. After re-serving my Defendants in this action the correct way, George Walker Bush once again chose to default rather than plead. On April 14, 2026, the clerk filed my notice of George Walker Bush default, the next day, April 15, 2026, I mailed my motion for default judgment against George Walker Bush, then suddenly the next day, April 16, 2026, the magistrate issues her R&R recommending dismissal claiming my story is a wholly fabricated delusion.

57. The first time I filed a motion to default Bush, on December 15, 2025, within hours came disgraced Judge Zack Zouhary's dismissal of *Cole*, now the second time I filed a motion to default Bush, the magistrate immediately files her R&R to dismiss before my served Defendants even had time to plead. The record indicates I am not litigating before a fair tribunal, but rather I am litigating directly against George Walker Bush and the CIA, who bribes and/or threatens judges into complete submission.

58. If my claims are so "implausible" and "fantastic and delusional" why would Judge Douglas R. Cole conduct a secret *ex-parte* meeting with my *Bush-1st* defendants two weeks after dismissing the case, why would the *Cole* case experience rapid replacement of three judges and the outright recusal of the magistrate, why would I be forever barred from the courts by yet

another proven crooked judge in bed with George Walker Bush, if my factual allegations actually "rise to the level of being 'irrational or wholly incredible' and 'fantastic or delusional?'"

59. I have already submitted the large website log evidence file, a total of 2,920 pages of annotated website visits and meetings, as an exhibit of the Complaint, that proves my defendants conspired with the employees of the two voting machine companies in Toronto and the UK, and further conspired with China to rig the 2020 election. I further submitted the evidence that China has full access to Facebook to spy on US citizens, and even has access to the NSA Super Data Center in Salt Lake City. I have proven my Defendants have committed crimes on the scale that warrants their executions as to law. So, when I allege my Defendants spent three years trying to kill me, it makes perfectly logical sense and is not only more than "*plausible*" it is highly *probable*.

## II. STANDARD OF REVIEW

60. Under 28 U.S.C. §636(b)(1), this Court must conduct a de novo review of those portions of the R&R to which objection is made.

## III. OBJECTION #1 – MISAPPLICATION OF APPLE v. GLENN

61. The R&R relies on *Apple v. Glenn* to dismiss for lack of subject-matter jurisdiction. However, *Apple* permits dismissal only where allegations are: "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." This standard is extremely narrow and applies only to claims that are inherently, impossible, wholly fictitious, or clearly baseless on their face. As I have demonstrated, that is not the case here.

62. Under *Hagans v. Lavine* (415 U.S. 528 (1974)) and *Bell v. Hood* (327 U.S. 678 (1946)), dismissal for lack of subject-matter jurisdiction is appropriate only where claims are "wholly insubstantial" or "absolutely devoid of merit." As I have demonstrated, that is not the case here.

63. The Supreme Court in *Denton v. Hernandez* (504 U.S. 25 (1992)) further clarified that factual allegations may be rejected only where they are "clearly baseless" or describe "fantastic or delusional scenarios." But also "A finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or wholly incredible." As I have demonstrated, that is not the case here.

64. I allege with evidence in part, detention in a jail facility, exposure to extreme cold conditions, physical and emotional injury, including a gunshot wound, and involvement of identifiable individuals. Followed by further actions and facts detailed in the Complaint and incorporated exhibits.

65. My allegations involve real-world events, identifiable actors, and physical and emotional injury, and therefore do not meet this extremely narrow standard. Accordingly, dismissal under *Apple v. Glenn* is improper.

## IV. OBJECTION #2 – IMPROPER REJECTION OF FACTUAL ALLEGATIONS

66. The R&R states that the Court need not accept factual allegations that are "irrational or wholly incredible." However, courts must distinguish between implausible legal conclusions, and factual allegations that must be accepted as true. Under *Ashcroft v. Iqbal* (556 U.S. 662 (2009)) and *Bell Atlantic Corp. v. Twombly* (550 U.S. 544 (2007)) factual allegations are assumed true only conclusory statements are disregarded. The R&R improperly rejects my factual allegations *wholesale*, rather than separating, factual content from conclusions or interpretations. This constitutes an improper weighing of credibility at the pleading stage. Further under *Erickson v. Pardus* (551 U.S. 89 (2007)) "A document filed pro se is to be liberally construed."

## V. OBJECTION #3 – CONFLATION OF NARRATIVE WITH FACTUAL CORE

67. The R&R focuses on certain characterizations within the Complaint and uses those to dismiss

the entire action. However, even if portions of a complaint are speculative, exaggerated, or poorly framed the Court must still evaluate whether there exists a core of plausible, actionable facts. My Complaint and incorporated exhibits include specific incidents, specific injuries, and specific actors. These allegations must be evaluated independently of any broader narrative.

## VI. OBJECTION #4 – IMPROPER USE OF SUBJECT-MATTER JURISDICTION

68. The R&R dismisses under Rule 12(b)(1) for lack of subject-matter jurisdiction. However, federal courts have repeatedly held dismissal for lack of jurisdiction is appropriate only when claims are so insubstantial as to be absolutely devoid of merit. Otherwise, dismissal—if any—should proceed under Rule 12(b)(6). Here, I assert federal constitutional claims and civil rights violations under 42 U.S.C. §§ 1983 and 1985. These are facially within federal jurisdiction. The R&R improperly uses *Apple v. Glenn* (183 F.3d 477 (6th Cir. 1999)) to bypass standard pleading analysis.

## VII. OBJECTION #5 – I SHOULD BE GRANTED LEAVE TO AMEND

69. Even assuming deficiencies in the Complaint, dismissal without leave to amend is improper. I, proceeding *Pro Se*, should be afforded an opportunity to clarify allegations, remove nonessential material, and present claims in a more structured and focused manner. The Sixth Circuit strongly favors allowing amendment, particularly for *Pro Se* litigants.

70. While *Apple v. Glenn* established that courts do not need to allow amendments if the complaint is clearly baseless or legally frivolous, it is *Apple* itself that warrants dismissal only when claims are "totally implausible," which as I have demonstrated, is not the case here.

## VIII. CONCLUSION

71. The R&R errs by misapplying *Apple v. Glenn* to claims that are not inherently fictitious, improperly rejecting factual allegations as "delusional", conflating narrative elements with the

factual core of the Complaint, and dismissing for lack of jurisdiction where federal jurisdiction plainly exists.

72. For these reasons, I respectfully request that the Court: REJECT the Report and Recommendation, ALLOW the case to proceed, or alternatively, GRANT leave to amend the Complaint.

Respectfully submitted this day 28, of April 2026,

x _s/David Andrew Bardes_
David Andrew Bardes, *Pro Se*
3522 Kimberly Dr, Apt 8
Erlanger, KY 41018
828-577-4980
davidbardes@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above was deposited in the United States Postal Service and mailed, or emailed to:

Andrew R. Mayle
Mayle LLC
P.O. Box 263
Perrysburg, OH 43552
amayle@maylelaw.com

John Charles Hansberry
Fox Rothschild LLP
Six PPG Place, Ste 1000
Pittsburgh, PA 15222
jhansberry@foxrothschild.com
wmorrison@foxrothschild.com
robertowhite@foxrothschild.com

Alexander Xavier Shadley & Anthony L Osterlund
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, OH 45202
axshadley@vorys.com
alosterlund@vorys.com

Edward G. Hubbard
Weston Hurd LLP
101 East Town Street, Suite 500
Columbus, OH 43215
ehubbard@westonhurd.com

Alexander Foxx & Kip T Bollin
Thompson Hine
312 Walnut Street, Suite 2000
Cincinnati, OH 45202
alexander.foxx@thompsonhine.com
kip.bollin@thompsonhine.com

Bradley A. Marcus
Orrick, Herrington & Sutcliffe LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037
bmarcus@orrick.com

James M Doerfler
Reed Smith LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
jdoerfler@reedsmith.com

Travis Lyle Brannon
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222
travis.brannon@klgates.com

Robert W. Sparkes, III
Reed Smith LLP
100 High Street
Boston, MA 02110
rsparkes@reedsmith.com

Michael John Thomas Downey
US Attorney's Office
303 Marconi Blvd, Ste 200
Columbus, OH 43215
michael.downey@usdoj.gov

Robin L. Jackson
Senn Legal
P.O. Box 12279
Charleston, SC 29422
Robin@sennlegal.com
ryanjshepler@gmail.com George W. Bush, Laura Lane Welch Bush
10141 Daria Place
Dallas, TX 75229

George W. Bush, Laura Lane Welch Bush
10141 Daria Place
Dallas, TX 75229


This day 28, of April 2026,

x _s/David Andrew Bardes_
David Andrew Bardes, *Pro Se*
3522 Kimberly Drive, Apt 8
Erlanger, KY 41018
828-577-4980
davidbardes@yahoo.com

Exhibit 1

X-Rays of Hip and Bullet & Subsequent Surgery











